**Alta Faye Walker LAKE and Lynn Alvin Lake, Plaintiffs and Appellants,**

**v.**

**HERMES ASSOCIATES, a partnership, Defendant and Respondent.**

**No. 14291.**

Supreme Court of Utah.

July 9, 1976.

---

1. *State v. Mullins*, Utah, 549 P.2d 454.

Frank J. Allen, of Clyde & Pratt, Salt Lake City, for appellants.

Nick J. Colessides, Salt Lake City, for respondent.

CROCKETT, Justice:

Plaintiffs, Alta Faye Lake and Lynn Alvin Lake, sued for breach of contracts by which defendant Hermes Associates agreed to purchase their ⅑ interest each in property near 7200 South and Ninth East in Salt Lake City to be used in developing a shopping mall. Defendant's position was that the terms of the contract called for $10,000 each as the purchase price; whereas, the plaintiffs contend that the contract tied the purchase price to any pro rata increases obtained for the other ⅑ interests in the property involved in probate proceedings, which would entitle them to $22,143.02 each for their respective shares. Upon a trial, the court made findings and judgment adopting the defendant's position. Plaintiffs appeal.

The property in question was originally owned by the Walker family, in which plaintiffs are heirs. It was held in joint ownership by plaintiffs and other family members in the following interests: Plaintiff Alta Faye Lake ⅑, plaintiff Lynn Lake ⅑, Austin L. Walker ⅑, J. B. Walker ⅑, estate of R. E. Walker ⅑, and estates of Minetta and Ila Walker ⅘.

Desiring to acquire the property, defendant in 1973 entered into contracts to purchase the others' interests; and had submitted offers to purchase the last listed ⅝ interests, referred to as the "Walker Estates," which were in probate. It entered into separate contracts with each of the plaintiffs. Both recited that the price was to be $10,000 for the ⅑ interest, subject to the following provisions as to increase in price:

From the contract with Lynn Lake:

It is understood that under no circumstances will the purchase price decrease, but *if the bids* for similar interests in the various *Walker estates are improved by competitive bidding,* then we agree . . . the amount finally paid by us to you hereunder shall become the price paid per ⅑ interest in said court proceedings.

From the contract with Alta Faye Lake:

. . . it is possible that at the court confirmation of the sale, the price will be improved by competitive bidding. I agree that, *if an amount in excess of $10,000 for each ⅑ interest is paid* . . . *I will pay to you* . . . that amount which is necessary to make your sales price *the same as the sales price on the court confirmed sale.*

The facts pertinent to the question of competitive bidding on the ⅝ interests of the "Walker Estates" in the property are these: In the probate proceedings defendant Hermes entered its bid. But the court ruled that the highest and best bid was by J. B. Walker (since deceased) for $15,200 net per acre, which figured out to $92,612. This bid was accepted by the trial court.

Due to misunderstanding and difficulty not material here, that sale was not completed but was later set aside. Thereafter, the defendant negotiated a purchase of the ⅝ interests of the "Walker Estates" for $88,573, which figures $22,143 per ⅑ interest. This sale was thereafter upon appropriate petition, confirmed by the probate court. Defendant then tendered $10,000 to each of the plaintiffs for their respective ⅑ interest. Plaintiffs each refused the tender, and instituted this suit. The trial court ruled that inasmuch as the interests of the "Walker Estates" were not

**128**

sold in competitive bidding, under the language of the contracts the plaintiffs had no cause of action against the defendant, but each must accept the $10,000.

■ The defendant places reliance on the standard presumptions of credibility and verity to be accorded the findings and judgment of the trial court.[1] However, in a case of this nature, where the resolution of the controversy depends upon the meaning to be given documents, the trial court is in no more favored position and is no better able to determine the meaning of such documents than is this court. Therefore, as to such an issue, those presumptions do not apply.[2]

Defendant is unquestionably correct in its argument, apparently persuasive to the trial court, that the actual sale of the ⅝ interest of the "Walker Estates" in the property for $88,573 was not arrived at through competitive bidding, but was confirmation of a negotiated sale. The countervailing argument of the plaintiffs is that the express words of the contracts do not require that such a sale of the "Walker Estates'" interests be increased by competitive bidding in order to improve plaintiffs' price. What it states is that if the "bids" for those interests are improved by competitive bidding, then the plaintiffs are entitled to the pro rata increase in price.

■ There can be no question but that in the first sale of the ⅝ interest of the "Walker Estates" in the probate proceedings there was competitive bidding, which resulted in the offer of $92,612. Even though difficulty developed so that that sale was set aside and later a negotiated sale for $88,573 to this defendant was confirmed by the court, the only reasonable inference to be drawn from the circum-

stances is that "the bids for similar interests in the "Walker Estates" are [were] improved by competitive bidding." Therefore, according to the terms of his contract quoted above, plaintiff Lynn Lake is entitled to receive an amount equal to that paid per ⅛ interest for the "Walker Estates."

■ The same conclusion is impelled with respect to the contract of Alta Faye Lake, and there is an additional reason why she is entitled to the increased price. It will be observed from the language of her contract that there is no requirement that the "Walker Estates'" sale price be improved by competitive bidding. It does contain a recital that "It is possible . . . that the price will be improved by competitive bidding." But the defendant's promise to pay more is not limited to that happening. Rather, it is a simple and unconditional promise that:

> . . . if an amount in excess of $10,000 for each ⅛ interest *is paid* . . . *I will pay to you* . . . that amount which is necessary to make your sales price the *same as the sales price on the court confirmed sale*. [All emphasis to contract provisions is added.]

On the basis of our discussion herein, it is our conclusion that the only reasonable meaning and application of the contracts in question committed the defendant to pay the plaintiffs the price increased to the equivalent paid for each ⅛ interest of the ⅝ interests included in the "Walker Estates." The findings and judgment are reversed. Costs to plaintiffs (appellants).

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

1. Citing *Charlton v. Hackett*, 11 Utah 2d 389, 360 P.2d 176.

2. See *Burns v. Skogstad*, 69 Idaho 227, 206 P.2d 765 (1949); *Orvis v. Higgins*, 2 Cir., 180 F.2d 537.